UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN BOSS,

       Plaintiff,

v.                                                  Case No. 1:10-cv-49
                                                Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                       /

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

        Plaintiff was born on November 27, 1959 (AR 186).[1] She completed one year of college and received special job training in data entry (AR 203-04). Plaintiff alleged a disability onset date of July 1, 2006, when she was injured in an auto accident (AR 17, 186). She had previous employment as the owner/operator of a packing and shipping business (AR 176-77, 191). Plaintiff identified her disabling conditions as: chronic low back pain; cervical neck injury; chest cavity wall injury; Crohn's disease; injury to left ribs; cardiomyopathy; right leg weakness from low back pain; and, severe bilateral tennis elbow (AR 190). Plaintiff's alleged disabling conditions affect her ability to stand, walk, sit, and move up and down, and weakness in her right leg requires her to ambulate with a cane (AR 190). On May 20, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's

---

[1] Citations to the administrative record will be referenced as (AR "page #").

claim *de novo* and entered a decision denying benefits (AR 13-19).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 1, 2006 and met the insured status requirements of the Social Security Act through December 31, 2009 (AR 15).  At step two, the ALJ found that plaintiff suffered from severe impairments of: degenerative disc disease of the cervical and lumbar spine; and mild cardiomyopathy (AR 15).  The ALJ also found that plaintiff's history of Crohn's disease, irritable bowel syndrome, probable fractured sternum, and depression were not severe impairments (AR 15).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 16).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform the exertional requirements of light work as defined in 20 C.F.R. § 404.1567(b) with the following nonexertional limitations:

> no climbing of ladders, ropes or scaffolds; occasional climbing of ramps or stairs; frequent balancing and kneeling; occasional stooping, crouching and crawling; and only occasional rotation, extension or flexion of the neck.

(AR 16).  The ALJ determined that plaintiff was not disabled at this step (AR 18).  Specifically, the ALJ found that plaintiff was capable of performing her past relevant work as a general office worker, because this work did not require the performance of work-related activities precluded by her RFC (AR 18).

As an alternative to this decision, the ALJ reviewed plaintiff's disability at the fifth step, where he determined that she could perform a number of jobs in the unskilled, light occupational base (AR 18-19).  Specifically, plaintiff could perform the following jobs in Michigan:

video surveillance monitor (552 jobs); cafeteria attendant (3,039 jobs); lobby attendant / ticket taker (2,843 jobs); greeter / information clerk (2,280 jobs) (AR 19).

Accordingly, the ALJ determined that plaintiff was not under a disability as defined in the Social Security Act, from July 1, 2006 through the date of the decision (May 20, 2009) (AR 19).

### III. ANALYSIS

Plaintiff raised two issues on appeal.

### A. The decision's credibility evaluation is not supported by substantial evidence

Plaintiff contends that the ALJ's credibility finding is distorted and relies on such insubstantial evidence that it cannot be allowed to stand. The court disagrees. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that, in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007). Nevertheless, an ALJ's

credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ found that plaintiff statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent the symptoms were inconsistent with the RFC assessment (AR 16-17). In reaching this determination, the ALJ stated:

> It appears to the undersigned that the claimant's complaints of pain are out of proportion to the objective medical evidence. There is no question the claimant has degenerative changes in her spine. However, there is little evidence of neurological involvement that would cause significant pain. Her doctors have treated her primarily with injections but the claimant has had little subjective relief. No doctor is recommending surgery. The claimant uses a cane but there is no indication in the medical [sic] that is [sic] has been prescribed by a physician. Her primary care physician, Dr. Jarvey [sic], stated in his latest assessment that the claimant does not need a cane for ambulation (Exhibit 38F).

(AR 17). In addition, the ALJ determined that plaintiff was exaggerating her symptoms of disabling pain:

> As previously noted, the claimant's past doctors have indicated some concerns about the extent to which the claimant's "behavior" plays a part in her complaints of pain. In the past her Waddell signs (tests indicating a non-physical reason for complaints of pain) were "elevated" (Exhibit 26F). Another surgeon withdrew from treating plaintiff because of her behaviors (Exhibit 22F). These are indicators the claimant is exaggerating her pain.

(AR 18).

The ALJ addressed various portions of the record in support of this determination. The ALJ found that an MRI taken within a month of plaintiff's July 1, 2006 auto accident, which he identified as Exhibit 29F, did not indicate traumatic herniation of any disc (AR 17). Plaintiff points out that the MRI at issue involved plaintiff's sternum (AR 772). While the ALJ apparently misidentified the exhibit, defendant points out that an MRI taken after the accident, on or about July 11, 2006 and identified as part of Exhibit 25F, noted "minimal bulging at L4-5 level," some

6

degenerative posterior changes as L4-5 and L5-S1, and slight narrowing of the width of the spinal canal at L4-5, but found "no evidence of any posttraumatic disc herniation" and that "nerve impingement is not clearly evident" (AR 595). The ALJ referred to the most recent MRI of plaintiff's lumbar spine, which showed a mild disc herniation at the L4-5 level with no evidence of neurological damage (AR 17, 796).

The ALJ also considered plaintiff's history of pain exaggeration and pain magnification. The ALJ observed that plaintiff had complained about back pain prior to the alleged onset date (AR 17). The ALJ found these complaints to be "out of proportion to the objective evidence" (AR 17). In March 2005, more than one year before the auto accident, an orthopedic surgeon, Dr. Palmitier, indicated that plaintiff had mild degenerative disc disease and an elevated Waddell score suggesting secondary gain issues (AR 17). Dr. Palmitier made the following observation:

> She does symptom magnify pain behaviors [sic] and has pain with simulation maneuvers and giveaway weakness as well as nondermatomal sensory loss and superficial sensitivity to palpation. She therefore has an elevated Waddell score.

(AR 736). Dr. Palmitier believed that plaintiff's elevated Waddell score suggested "other secondary gain issues" and that he did not "have anything to offer other than what has already been done" (AR 737).

The ALJ also noted that plaintiff saw a neurologist in March 2006 who determined that her behavioral issues and unrealistic expectations made her a bad surgical candidate (AR 17, 563). The ALJ was apparently referring to Jurgen Luders, M.D., a neurosurgeon who treated plaintiff in March 2006 (AR 563). In his report, Dr. Luders referred to plaintiff's continuous telephone calls to the doctor's office and to a physical therapist's office, and that there were "red

7

flags" regarding plaintiff's expectations of surgery. The doctor was concerned that plaintiff "was splitting and attempting to pit healthcare providers against one another." Dr. Luders did not feel comfortable managing her care, and thought that another doctor should take over her care (AR 563).

The ALJ also referred to a doctor's opinion from June 2006 which "noted an exaggerated degree of pain in comparison to her neurological findings" (AR 17). The parties assume that this is an opinion from Frank La Marca, M.D., dated June 1, 2006 (AR 664-65). Dr. La Marca noted that plaintiff's MRI showed no significant disc protrusion except for a questionable left disc bulge at the L4-L5 level and that this protrusion was "without significant neuroforaminal compromise or nerve root compression" (AR 664-65). The doctor also observed that plaintiff's "exaggerated degree of pain she is feeling in comparison to her neuroradiologic findings make me think that she would not do well following a surgery for back pain" (AR 665).

With respect to the need for a cane, plaintiff states that Dr. Javery is not her primary care physician, but rather her pain management physician. Plaintiff's Brief at p. 13. When asked by the ALJ if the cane was prescribed by a physician, plaintiff did not answer the question directly, later testifying that "[i]t was actually recommended by my physical therapy [sic] shortly after my accident" (AR 29). In short, there is no evidence that a doctor prescribed plaintiff a cane.

The ALJ has found contradictions among the medical records, plaintiff's testimony, and other evidence, specifically with respect to symptom magnification. *See Walters*, 127 F.3d at 531. The ALJ's credibility determination, though inarticulate at times, is reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. Accordingly, there is no compelling reason to disturb the ALJ's credibility determination in this case.

> **B.  Dr. Javery's opinion should have received controlling weight. The decision errs in rejecting his opinion.**

Plaintiff contends that the ALJ improperly evaluated the opinions of her pain management physician, Keith Javery, D.O.[2] On April 15, 2009, Dr. Javery completed a medical provider's assessment of plaintiff's ability to do physical work-related activities (AR 806-11). This assessment included limitations that plaintiff could lift only 10 pounds, and sit, stand or walk for a total of 6 hours in an 8 hour workday (AR 17, 806). Dr. Javery found that plaintiff could only sit for 30 minutes without interruption, stand 20 minutes without interruption and walk for 20 minutes without interruption (AR 806). Based on the vocational expert's testimony, these limitations, i.e., the inability to engage in sustained work activity on a regular continuing basis for eight hours a day and the need to exceed customary break or rest periods, would preclude all employment (AR 40-41).

In determining plaintiff's RFC, the ALJ briefly referred to the physical RFC assessment prepared by the state agency physician, which determined that plaintiff could perform work at the medium exertional level (AR 18, 414-22). This RFC assessment, dated September 6, 2006, was prepared a few months after plaintiff's accident. The ALJ adopted portions of this RFC assessment, but apparently felt that plaintiff's condition had deteriorated, because the ALJ lowered plaintiff's RFC from medium work to light work (AR 18). The ALJ explained that he was giving plaintiff "the benefit of every reasonable doubt" (AR 18). However, the ALJ gave little weight to Dr. Javery's opinion with respect to plaintiff's RFC:

> As noted above, there is little objective evidence of neurological abnormalities related to the claimant's spinal impairments. There is no evidence of weakness, atrophy or numbness. It appears that the restrictions given by Dr. Jarvey [sic] are

---

[2] The court notes that the ALJ refers to Dr. Javery as "Dr. Jarvey." In addition, plaintiff has identified Dr. Javery as an "M.D." rather than a "D.O."

> based primarily upon subjective complaints of pain. Although it is reasonable to expect the claimant to have some level of pain, there is insufficient evidence to support pain that would prevent the claimant from standing or walking more than an hour. Despite the claimant's testimony that her condition has deteriorated to the point that she considers herself worse off than she was immediately after the motor vehicle accident of July 1, 2006, a treating physician, Dr. Dagher, reported in February 2009 that her neck pain is controlled, getting moderate to good relief with no side effects from Flexeril. He also noted her lower back pain, though moderate to severe, was improving (Exhibit 36F).

(AR 17-18). The ALJ also referred to plaintiff's past history of pain exaggeration as a reason for declining to give Dr. Javery's opinion controlling weight (AR 18).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

The court agrees that the ALJ did not properly evaluate Dr. Javery's opinion. The ALJ discounted Dr. Javery's opinion, in large part, based upon Dr. Dagher's treatment of plaintiff in February 2009. After reviewing the record, the court concludes that the ALJ's decision does not accurately reflect the extent of plaintiff's treatment with Dr. Dagher. On February 19, 2009, Dr. Dagher noted that plaintiff suffered from lumbar facet joint arthropathy, lumbosacral radiculapathy, lumbosacral spondylosis and lumbar paraspinal muscle spasm (AR 802). The doctor treated these conditions at that time with three Lidocaine injections (AR 802). A few weeks later, on March 4, 2009, Dr. Dagher noted that plaintiff had lumbosacral spondylosis, degenerative lumbar disc disease and lumbar paraspinous muscle spasm (AR 798). That day, the doctor gave plaintiff three Lidocaine injections (AR 799). The ALJ does not mention these injections, which suggest that plaintiff had on-going pain in February and March 2009. In this regard, plaintiff's muscle spasms could be considered as a reliable indicator of intense pain. *See Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365, 1370 (6th Cir. 1991) (reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption). The record reflects that Dr. Dagher gave plaintiff six injections for back pain in February and March 2009, within two months of Dr. Javery's opinion. Contrary to the ALJ's decision, this additional treatment suggests that plaintiff's condition had worsened since her automobile accident in 2006.

The ALJ did not articulate good reasons for not crediting the opinion of Dr. Javery as a treating source. *See Wilson*, 378 F.3d at 545. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's treatment

with Dr. Dagher and a re-evaluation of Dr. Javery's April 15, 2009 opinion regarding her ability to do physical work-related activities.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).


Dated: June 13, 2011                           /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).